Planning Services et al. versus Leslie Rutledge et al. Mr. Wagner. Mr. Durker can still close out. Otherwise, we look ready to go. Mr. Wagner, good morning and we're ready when you are. May it please the court. My name is Vincent Wagner, Deputy Solicitor General, here representing the Arkansas Attorney General and the other defendants. The District Court enjoined Arkansas's ban on genetic discrimination by abortion based on a novel categorical right to pre-viability discriminatory abortion. And it granted a pre-enforcement facial injunction of Arkansas's requirement that all abortion practitioners be board certified or eligible OBGYNs based solely on plaintiffs' subjective and self-serving predictions about the feasibility of complying with that requirement. Recent developments have not mooted Arkansas's appeal on this point, but instead underscore the District Court's key error in granting the injunction here. For these and other reasons, this court should reverse and remand with instructions to order random reassignment. So first, I'm going to discuss why the Constitution does not require Arkansas to permit discriminatory abortions. And then second, I'd like to explain the District Court's errors in enjoining the OBGYN requirement that it did not estimate the likelihood that any of plaintiffs' predicted burdens would actually come to pass. But before I go on to these points, I'd like to say a word about the undue burden standard. This court clarified the undue burden standard last month in Hopkins v. Jigley. It said the undue burden standard is a two-step test. The first step asks... Well, it mentioned hardly the likelihood of...capable of being repeated in likelihood. You know, the standard objection to mootness. You basically conceded the case is moot, as I read your memorandum, but say it's unfair for mootness to get in our way. No, Your Honor, that's... That's telling us to violate Article 3 of the Constitution, so I wish you'd move on to the issues that we know are still alive. Your Honor, I wouldn't read our motions papers as conceding mootness at all, number one. And number two... You didn't concede it. You didn't concede it. You didn't give us any reason why the case...why that part of the injunction isn't moot. I heard your reference to the outright ban. Are you referring to the 18 weeks issue, Your Honor? I'm talking about the downs issue and the 18 weeks issue. Those are not moot. Yes, Your Honor, I agree. And plaintiffs in their second motion to dismiss that they filed a few weeks ago included a note that said they were not arguing that those aspects of the case were not moot. The only argument they've made is that the appeal of the injunction as to the OBGYN requirement is moot. So that's why our motions papers were directed at the issues related to the OBGYN requirement. Counsel, we're not on the same page here. If there are three issues on appeal and one of them is moot, then we don't have jurisdiction to consider that issue. I expect counsel for Planned Parenthood to help me with how we instruct the district court in precise terms to vacate that part of the injunction, which Planned Parenthood doesn't address either. Neither one of you has done much valid work on this mootness question. But it's our starting point because it's jurisdictional. Your Honor, the recent developments at LRFP don't raise any mootness issues with respect to the Down Syndrome law or with respect to the 18 week law. That's why I urged you to move to those issues. You want to talk about the merits of an issue that opposing counsel says is moot by reason of their own action. And your opposition papers don't address that at all. So I'm kind of taking it as a given. Mr. Wagner, to the extent that you think that there may be some kind of dispute on that in the panel, I agree with Judge Loken. It does appear that that issue is moot. And I'd sure rather have our spend the remaining 15 minutes on the two issues that seem alive to me. I'm happy to do that. I would like to make one point about why we don't think the issue is moot here. And that relates to the fact that they remain subject to the same requirement, which is their alleged injury here, that they have to hire or be board certified or eligible OB gyms. It's similar to the situation in Craig versus Boren, where the individual plaintiff had turned 21. So the Supreme Court said that his can't claim was moot. But that did not move the claim in that case of the of the seller of beer because the seller of beer remains subject to Oklahoma law there. So in the same way, plaintiffs here remain subject to the OB gym requirement. And they have the same alleged constitutional injury they've always had. And it's made clear that they intend to seek further injunctive relief from the district court. And that's why you ask this court to clarify the standard. But with that said, I'm happy to discuss the down syndrome issue in this case. And we don't think that the genetic discrimination ban receives any heightened constitutional scrutiny because neither this court nor the Supreme Court has ever interpreted Roe and Casey to create a categorical right to previability abortion based on a protected characteristic, such as a genetic condition like down syndrome. And the openness of this question is on display this week. Missouri's own genetic discrimination ban is before another panel of this court tomorrow afternoon in Reproductive Health Services versus Parsons. Now, the district courts. I don't counsel. I don't care what any how any circuit court, including ours, has construed the language in Casey and other contexts. The court itself seemed unequivocal in Casey and has confirmed that. That's our marching order. You've got to convince me that the Supreme Court can point to specific language in specific cases that say otherwise. Casey couldn't have said it more clearly. I first back up, Your Honor, and start with Roe, where Roe expressly said that the abortion right does not include a right to terminate a pregnancy for whatever reason the woman alone chooses. But then, to Your Honor's point in Casey, Casey's discussion of previability bans is about across the board bans on previability abortion. Not on targeted limitations on previability abortions that even in some cases can lead to the prevention of a limited number of previability abortions. So in Casey, for instance, there was a parental notification statute at issue. And the court acknowledged that that statute for minor girls who would not be able to obtain a judicial bypass would operate as a ban on certain previability abortions. But it upheld the statute regardless of the fact that it would, in some instances, prevent a previability abortion. And this is similar to this court's language earlier this year in Ingrid Rutledge, where it's acknowledging this distinction in Casey between bans and more targeted restrictions. Where there, like the COVID emergency measures in Rutledge, the genetic discrimination ban does not operate as an outright ban on all or virtually all previability abortions. So that's why this case does not implicate the language from Roe and Casey. And it triggers no heightened constitutional scrutiny and prevails under rational basis review. But in any event, if this court were to choose as a matter of first impression to apply the undue burden standard, it would still—Arkansas would still prevail on this appeal. Because the district court simply didn't do the work necessary to find that there was an undue burden in this case. The district court expressly acknowledged that plaintiffs had put forward no evidence whatsoever of the fraction of women that would face a substantial obstacle as a result of the genetic discrimination ban. This is at page 98 of the preliminary injunction in the addendum. And given this lack of evidence on this point, given the paucity of evidence, the district court should have followed this court's holding in comprehensive health versus Hawley and refused to enter an injunction, given that there was no evidence on this point. Which—I'd like to say another word about why we do not think this case is moot. And I think it helps to look at the individual plaintiffs here, Stephanie Ho and Thomas Tweeden. Their claims cannot be mooted by the existence of other board-certified or eligible OBGYNs in Arkansas. They remain subject to the OBGYN requirement, and the OBGYN requirement continues to prevent them from performing abortions. They argue that that's their injury for purposes of Article III standing. And that's the same argument they've made throughout this entire case. So whether there are additional board-certified or eligible OBGYNs in Arkansas that can suffice to meet abortion demand, which is what plaintiffs have said moots out our appeal on this issue, that goes to the merits of plaintiffs' undue burden claim and doesn't go to this court's jurisdiction to hear this issue. And a similar point holds true for LRFP itself, where LRFP is representing to the court that it's hiring employees that it would not otherwise hire if Arkansas were different. Therefore, it continues to suffer the same alleged Article III injury, and Arkansas' appeal on this issue is not moot. Haven't the pregnancies of those two individuals been terminated? No, Your Honor. The individual plaintiffs here are individual abortion practitioners who claim that it's unconstitutional to prevent them from performing abortions on the basis of them not being board-certified or eligible OBGYNs. So again, the overarching point here is that whether the plaintiffs in this case have sufficient board-certified or eligible OBGYNs to meet demand, that goes to the merits of the undue burden claim and not to this court's Article III jurisdiction to consider the undue burden claim. And that shows that this case is not really like any of the cases that plaintiffs cite in their motions to dismiss. In each of those cases, an intervening event that occurred while the preliminary injunction was on appeal rendered the possibility of further injunctive relief impossible. And that's not what happened here. Plaintiffs continue to suffer the same alleged injury being subject to the OBGYN requirement. That's why I drew this court's attention in the beginning of this discussion back to Craig v. Boren where the Supreme Court said for Article III purposes, it is sufficient injury to be subject to a state law that's being challenged. That's what the beer seller's claim was in Craig v. Boren. And then the court went on, after it had determined the Article III issue, the court went on to the question of third-party standing and whether the beer seller there had satisfied the elements of third-party standing. So the factual developments that plaintiffs have identified in their motion to dismiss don't move this portion of Arkansas' appeal. By contrast, these same factual developments underscore why the district court should never have granted a pre-enforcement facial injunction here and why the district court should not grant any further injunctions when this case is on remand. The plaintiffs never satisfied the standard for a pre-enforcement facial injunction. Their claim was based solely on their unrealistically pessimistic predictions about their ability to comply with the injunction here. And the district court totally refused to consider evidence in the record contrary to plaintiffs' predictions and instead assumed that it was 100% likely that each of these predictions would come true. And so all of the scenarios proposed by the district court and the plaintiffs to estimate the large fraction here, they hinged on the same assumption that plaintiffs could never comply with the OBGYN requirement. But neither the plaintiffs nor the district court ever estimated the probability that plaintiffs would not be able to comply with the OBGYN requirement. And so for example, if you look at the testimony and declarations of plaintiff's economics professor, Jason Lindo, he says that hiring even one additional board-certified OBGYN would substantially change his analysis, but he made no effort to estimate the likelihood that the plaintiffs would be able to do that. So this is an issue for the merits of the undue burden claim again and not this court's jurisdiction. Instead, at each of these junctures, plaintiffs in the district court just assumed it was 100% likely that plaintiffs would be unable to comply with the OBGYN requirement. And they have a history of making representations like this in the district court. Arkansas, at the district court's request, put forward evidence from Jigley that showed that plaintiffs often make these sorts of pessimistic predictions about their ability to comply. These were excerpts attached to Arkansas's preliminary injunction brief after the hearing. This is docket number 103, and it's in volume 6 of the Joint Appendix. And in these excerpts, they show that as late as the June 2018 hearing in that case, Stephanie Ho for Planned Parenthood and Lori Williams for LRFP were testifying that both of those facilities would never be able to find a contract physician to meet that requirement in that case. Yet less than five months later, in November of 2018, they had announced that they came into compliance with the contract physician requirement. And so the district court just ignored this pattern by the plaintiffs of making these sorts of representations to obtain pre-enforcement injunctions of Arkansas law and then complying soon afterwards. And the district court ignored this pattern despite consolidating this case with Jigley on the basis of an alleged factual overlap between the two cases and after expressly asking Arkansas to put forward relevant evidence from Jigley. And if the district court hadn't ignored this evidence, it could not have made the unwarranted assumption that it was 100% likely the plaintiffs would never comply with the OBGYN requirement. And I think using numbers can help illustrate this point. So the district court's highest estimated fraction of the number of women that were burdened here depended on two assumptions. It was 70%. It depended on the assumption that LRFP would never comply and that it would close its doors because it would not be able to comply with the OBGYN requirement. But the district court didn't estimate how likely either of those assumptions were. If it's only 10% likely that either of those assumptions will come true, then it's incorrect to say that it's a 70% fraction of women that are predicted to be burdened by the OBGYN requirement. You have to discount that 70% prediction by the probability of the prediction's preconditions coming to pass. So a 70% prediction, if it were 10%, would be more like 7%. If it were 90%, it would be more like 65%. But the point is not the numbers here because this court's made clear that this analysis is more conceptual than mathematical. The point is that the district court was not free to ignore contrary evidence, undermining plaintiffs' unrealistically pessimistic predictions in this case, and simply assume that it was 100% likely they would never comply with the OBGYN requirement. Without such an estimate, the district court was left to wade through a quagmire of what-ifs, which is the same situation that this court condemned in Comprehensive Health v. Hawley in 2018. So this court should hold that this appeal is not moot and direct that on remand, when plaintiffs seek the further injunctive relief they've said they intend to seek, the district court should grant no more facial injunctions without making an objective and independent assessment of the likelihood that plaintiffs' predicted burdens will actually come to pass. And I'm going to reserve the rest of my time for rebuttal unless there are further questions. Thank you. Ms. Turner? You have to unmute. You have to unmute. There we go. Can you hear me now? Yes. Okay, great. I'd like to start with the two issues that are properly before this court, whether Arkansas... Wait, I need to address mootness with you. I've got a couple questions. Sure. One is, is it clear the individual appellees joined in the motion to dismiss? Yes, so Dr. Tveden has joined in the motion to dismiss. Dr. Ho is not part of this appeal because she withdrew from the preliminary injunction below. But all appellees in this appeal have joined in the motion to dismiss, Your Honor. Okay, and then help me with the vacator order. You don't address that. Sure, so we think we could... It looks to me, just my reaction is we would have to direct the district court to vacate all findings and conclusions that support or relate to the portion of the injunction that's moot. Your Honor, I think you could follow what this court did in Forbes, which we cite in our motion to dismiss briefing. And in that case, the court ordered the district court or dismissed the relevant portion of the appeal and remanded to the district court with instructions to vacate that part of the preliminary injunction. So I think you could do the same thing. Wait, that's not good enough for a preliminary injunction. I filed an opinion last week in a case called Perficient that addresses this at great length because it's a very serious and often ignored issue. And when the prevailing party is responsible for the mootness, a vacator is necessary. And when it's a preliminary injunction, you have the particular problem of the findings and conclusions supporting the preliminary injunction then somehow remaining alive in law of the case when there's a trial on the merits. And given your representation of mootness and that your own actions caused it, I want to make sure that doesn't happen. I can't just remand with a three-part injunction where two aren't moot and will be reviewed on the merits. I see this as a serious problem. And frankly, I got no help from you on it. Well, apologies for that, Your Honor. We have no problem with that. Most lawyers take this one for granted, frankly, because they haven't paused over. The devil's always in the details. Yes. And we have no problem with an instruction to vacate the part of the factual findings that are relevant specifically to the OB-GYN requirement if this court dismisses that. Okay. I want to make sure that was on the table and I had your position on it. Go ahead then with the rest. Great. So the only issues that are properly before this court are whether Arkansas may ban abortion before viability based on weeks of gestation or the woman's reasons for seeking care. And the answer to both questions is no under almost half a century of Supreme Court precedent. The district court properly and preliminarily enjoined both laws and this court should affirm. Turning first to the 18-week ban, it prohibits abortions at a point in pregnancy that all agree is before viability. In Edwards and MPB management, this court recognized that prohibitions on abortion before viability are per se unconstitutional, even if they contain limited exceptions. Because the 18-week ban is indisputably a ban on previability abortions, it is invalid. The reason ban is also invalid because it bans previability abortions based on a woman's reasons for seeking care. Casey made clear that the decision whether to terminate a pregnancy before viability is a highly personal one that must be left to the woman alone. Before viability, that court said, the state's interests are simply not strong enough to support a prohibition on abortion. Because the reason ban is inconsistent with that longstanding rule, this district court properly enjoined it. And it seems like two of your honors are in agreement with us that the court should reject the state's request for an advisory opinion on the OBGYN requirement. But just to underscore the point, we have recently been able to come into compliance with that law and accordingly agree that the law may go into effect now. So there is no controversy over that part of the appeal. And this court should dismiss it. Finally, this court should also dismiss the state's effort to seek review of the orders consolidating this case with Jigley. Those are non-final orders that are not immediately appealable in its interlocutory posture. I want to address a few points. Let me pause on that because I thought a little bit about it. And Judge Wilson is the one who transferred the case, right? That's correct. To Judge Baker. And then Judge Baker declined a motion to reconsider or, you know, drop that ball, please. And that's the order that's up on appeal, right? I believe they designated both the initial consolidation order and the denial of reconsideration. Well, I don't understand how the original order is appealable. So let's assume it's not. I mean, it's an untimely appeal if it was ever appealable. I think it would be appealable by mandamus. I don't believe they petitioned for mandamus, that we mandamus Judge Wilson. So if we would review Judge Baker's order for an abuse of discretion, which would be a rather heroic interference with district court management, but assuming we did it, assuming we concluded that the discretion was abused, it seems to me that decision would certainly be intertwined with the injunction that followed the denial of that order. So your intertwined argument doesn't really do it for me. But it seems to me on the merits, the abuse of discretion is an awfully high mountain for the state to climb. Well, I certainly agree with Your Honor that it would be very difficult for the state to show, and we think the state has not shown here, that there is an abuse of discretion. But I do want to push back on your view about the inextricably intertwined test and whether it is satisfied, because the state has conceded that the merits, the issues of the merits, are totally separable from the issue of whether consolidation is appropriate. And to the extent that Your Honor means that Judge Baker may have resolved this case differently than a different judge, you know, the state has not provided any evidence of judicial bias, which is the only reason why this court has historically granted reassignment on remand. So we don't think that would be appropriate either. And the only other argument that the state has made as to why the denial of reconsideration of the consolidation order is appropriate here is that the collateral order doctrine applies, which we also argue is incorrect because this is reviewable after final judgment, and this court held in alpine glass that this court will only find an interlocutory order immediately appealable under the collateral order doctrine if the entire class of orders is immediately appealable. So if this court were to find that this type of order were immediately appealable under the collateral order doctrine, that would mean that all orders of this type would always be immediately appealable, which would, you know, obviously burden this court and other parties considerably. But I want to just touch on... Counsel, let me ask you this. Based on the provision that bars abortions based on Down syndrome diagnosis, that applies to all abortions, correct? That's correct, your honor. That applies to pre-viability and post-viability. Does that make a difference here? Can it be severed, so to speak? Can it be ruled unconstitutional only as to pre-viability abortions? Yes, your honor, and that's exactly what the district court did in the preliminary injunction order. It did sever the law, and it only ruled that the law as applied to pre-viability abortions was unconstitutional. And that is clearly correct under KC, given its emphasis on the fact that no state interest, no matter how valid, can support a prohibition on the right to obtain an abortion prior to viability. Thank you. And it's not to say that the state is powerless to advance its interests. There are many other things that it may do, including, you know, again, because we have not challenged this as applied to post-viability abortions, but it simply cannot take away a woman's ability to choose the procedure prior to viability. Did your clients challenge that statutory provision in its entirety, or was your challenge from the very beginnings of this lawsuit restricted to the pre-viability situation? We only challenged pre-viability from the very beginning of this lawsuit, your honor. And, you know, our clients only provide care up to 21 weeks and 6 days, which is also a pre-viability point in pregnancy. So they only would have the ability to challenge a pre-viability ban. Thank you. And I just want to, I know that your honors seem to be in agreement that the OB-GYN requirement is moot, but I do want to stress, you know, the state only gives two reasons why it is not moot, and they're both incorrect. The state has argued that we might seek relief again, and it would be helpful for the district court to have these views on the law in case that happens. But that just shows that this is an advisory opinion, which this court, you know, is not empowered to give. Advisory opinions are always helpful, but that doesn't mean that they're permissible. And, you know, if we do seek relief in the future, which we simply don't know if we will, then the propriety of that relief will depend on the facts that apply at that time. And the state has also argued that this court should review the OB-GYN requirement portion of the preliminary injunction to clarify the standards for facial relief. But, again, that doesn't show that the appeal is not moot. You can't review a moot claim just to clarify legal standards, and this court has already resolved this issue, the standard for facial relief in the abortion context in Sioux Falls, and the Supreme Court has also provided that clarity in Casey and subsequent cases. Just to close out, you know, all this court needs to decide the remaining non-moot portions of this appeal are that the state may not ban abortion prior to viability. The 18-week ban all parties agree operates to prohibit abortions prior to viability, and so it is flatly unconstitutional under Casey and Edwards and MKB management. The reason ban also operates as a ban on a pre-viability abortions, and no state interest is strong enough to support that ban. If your honors have no further questions, then I will waive the remainder of my time. Thank you. Thank you. Mr. Wagner for Raval. Thank you, Your Honor. So I'd first like to discuss the consolidation order issue which came up in my opponent's presentation, and even if the standard of review here is an abuse of discretion, the district court abused its discretion through its inconsistent treatment at various points of the record related to the consolidation issues here. So this is the focus on the overlap between the record in this case and the record in Jekyll. Let me stop you because I don't know the procedural history. You're saying inconsistent actions at various times, were some of these actions after the motion to reconsider was denied? Everything was after the motion to reconsider was denied, Your Honor. Then wait a minute, that inconsistency, that's not an argument. I mean, a judge acted inconsistently after denying my motion, and that illustrates my motion should have been granted. I don't know, where does that, where does that point? The point, Your Honor, is the inconsistent handling of the Jekyll record because the district court denied the motion for reconsideration on the basis of alleged factual overlap between this case and Jekyll, but then after expressly asking Arkansas to put forward relevant excerpts from the Jekyll record, ignored that record evidence despite its clear relevance to the question of the believability of plaintiff's predicted burdens in this case. So on the one hand, the district court said the Jekyll record was relevant and asked for excerpts from the record and then did not analyze those record excerpts at all in its eventual grant of the preliminary injunction on the merits. So that inconsistent handling, and it was similar to the district court's reasoning in the reconsideration order itself, where it said that Jekyll is a closed case for purposes of the related case designation, but it's an open case for purposes of consolidation. That inconsistent treatment is an abuse of discretion. And regarding the genetic discrimination ban, I'd like to say first that Casey does not discuss the state's interest in preventing discrimination against those living with genetic conditions like Down syndrome. This is a point Justice Thomas makes in his concurrence in Box from last year, and admittedly it's not binding on this court, but he has a helpful discussion of the Supreme Court's holdings on these issues and why this is an open question under Supreme Court law. None of these laws burden a large fraction of women, and this Court should reverse and remand with instructions to order random reassignment. Thank you. Thank you, counsel. The case has been thoroughly briefed and well-argued. We will take it up.